Good morning, Your Honor. Logan Johnston for the appellants Thomas Betlach and the Arizona Healthcare Cost Containment System, known as ACCESS. May it please the Court, what I would like to do with my time, subject to your questions of course, is reserve two minutes for rebuttal and rely on our briefs for the two issues of race judicata and the Eleventh Amendment that we raised and focus on four points having to do with the merits of the plaintiff's claims. Those being, number one, the judgment on the pleadings in favor of the plaintiffs was inappropriate and erroneous. Second, that there should be no confusion about whether the State is making the argument that incontinence briefs for preventive purposes are simply not medically necessary. Third, that Arizona is doing exactly what federal law allows it to do, and that is to contain costs and control utilization by limiting services according to considerations of medical necessity and utilization. And it is doing exactly what the federal government has allowed other states to do, that being to exclude briefs for adults but require them for children under the Children's EPSDT program. And finally, the idea that there is any unreasonable policy here based on age is simply without merit. Congress has specifically rejected that idea and done so by statute. As to the judgment on the pleadings, I submit this is not a complicated case based in no small part because of the stage at which it was decided. It may become a complicated case. It might become an important case. I don't know. But at this point, it should not have been decided in favor of the plaintiffs on a motion for judgment on the pleadings. There's been no discovery. There's been no resolution of any of the factual issues. All the key allegations in the complaint were denied. And if, in fact, briefs for preventive purposes are not medically necessary, then Arizona has every right under federal and state law not to cover them. Arizona is simply asking for the right to prove that that is the case. And if the State's affirmative defenses and denials are taken as true for purposes of the plaintiff's motion, as I believe they have to be, then they preclude the decision below. There seemed to have been some confusion as to whether the State was contending that briefs for preventive purposes are not medically necessary and whether our primary emphasis was on the cost-effectiveness argument. We're making both. I just want to dispel any doubt about that. Briefs – well, our answer repeatedly in our denials and our affirmative defenses said that briefs are not medically necessary for preventive purposes. And the State has every right to make this clear. You said they're not necessary for preventive purposes. You mean briefs are necessary for other purposes, such as medical treatment? Correct. But not if they're intended to prevent disease? That's correct, Your Honor. We don't believe they do prevent disease. So we do cover them when – But if they did prevent disease, would they then be covered? If they could prove, if anyone could prove that they are medically necessary for that purpose, then I think we would cover them. And that's the whole issue in this case. We have denied that they are. And the Federal Government has approved our State plan making exactly that distinction. Does your plan say that, that the briefs are not covered because they're not medically necessary to prevent disease? Our State plan says, Your Honor, that personal care items, and that includes briefs, are not covered for preventive purposes. But your plan never talks about briefs. It doesn't use the word itself, no, Your Honor. It does talk about personal care items, and that is the category within which this falls. So you're absolutely correct. It doesn't use the term briefs. But medical supplies, Your Honors, is not a term of art. It's not one that's defined under Federal law. The State has discretion under 42 CFR 440.230, paragraph D, to make distinctions based on medical necessity and utilization control considerations. And both Judge Teshima and the plaintiffs recognize this. As the Supreme Court said back in 1977 in Beal v. Doe, it is hardly inconsistent with the objectives of the Act for a State to refuse to fund unnecessary, though perhaps desirable, medical services. We're just simply trying to prove that's exactly what we're doing. Well, your statute says medically necessary means a covered service is provided by a physician or other licensed practitioner, et cetera, to prevent disease, disability, or other adverse health conditions. So you agree that if the physician prescribed this to prevent disease, it would be covered? No, Your Honor. Well, where does that not come when a physician prescribes? This is a covered service. Part of the definition of medical necessity in Arizona is that the State has the right to question the physician's prescription, unlike the State of Missouri, for example, in the Hildebrand case on which the plaintiffs rely, where State law says all you need is a prescription that is per se proof of medical necessity. Our State, and I think many others, has a medical review component built in, so that if we have, as I think the evidence is in this case, something like eight instances in six years of people requesting this service and having a prescription for it, we have the right to question that. And that's what some of these plaintiffs brought to administrative review for exactly that purpose, to question our judgment and so that we could get the facts as to why, if it was the case, they were necessary as a preventive device for these individuals. I would submit, Your Honors, that on the merits, the case that is the most relevant in this discussion is the Hood case out of the Fifth Circuit, which the district court cited but did not discuss. Unlike the cases that the plaintiffs rely upon, which have to do with durable medical equipment instead of medical supplies, or that have to do with distinctions based solely on age, or that have State plans that don't spell out the kind of distinction we make, Hood makes it clear that the Federal Government approves State plans that exclude briefs for adults and require them for children under the BSDT program. What the Federal Government approved in Louisiana in the Hood case is exactly what it approved in Arizona in our case. And I submit that the Federal approval of the State plan should be entitled to some deference, especially at the pleading stage that we're at right now. Instead, I believe the district court simply substituted its opinion and analysis for an issue on which it had yet to hear why Arizona disagreed. The fourth point I wanted to make, and it's perhaps the most fundamental here, the district court decided this case, and the plaintiffs have argued it, on the basis that there is an unreasonable policy here based on an age criteria. The theory being that if Arizona covers briefs for preventive purposes for children, then it must cover them for adults. That, I submit, is something of a non sequitur. The distinction in Arizona that we have is not based on age. It's based on eligibility for two different programs. The one where briefs for preventive purposes are covered is the children's program, EPSDT. The other program is for adults. And the two are very separate. And to the extent there's any age criterion indirectly involved here, it is one that Congress has created by creating special programs for children. And Congress specifically, Your Honors, rejected the idea that services provided to one age group have to be provided to others. And it did so with specific reference to this EPSDT program, which is the sole reason Arizona covers briefs for preventive purposes for children. What it said was that 42 U.S.C. 1396A, small a, 10. It's an exception to that entire long provision. It says that the making available of the services described in the EPSDT statute, among others, to individuals meeting the age requirements prescribed therein shall not, by reason of this paragraph 10, require the making available of any such services or the making available of such services of the same amount, duration, and scope to individuals of any other groups. And one of the three groups, statutes, that they refer to specifically is 1396DA4. And that is the EPSDT program. May I ask you, you said that the principal case approved your point earlier about the ‑‑ I think it was about the discretion where it was good. Hood. H-O-O-D, Your Honor. Pardon me? It's S.D. v. Hood. S.D. v. Hood. It's from the Fifth Circuit. I believe it's 2004. Is it in your brief? Yes, sir. I'm trying to find it. I'm just looking through the index. It's probably under Dixon. What? Where is it? Under Dixon, maybe. Under Dixon? I believe the D in S.D. Oh, S.D. Xrel Dixon v. Hood. Okay. Good. I'm sorry. All right. So I think it's fundamentally incorrect to suggest that anything children can get under the all-inclusive EPSDT program must therefore be provided to adults. There's no program under Medicaid that is anything similar to EPSDT in breadth. There is nothing like the EPSDT program, which depends upon the concept of correcting or ameliorating a condition that applies to adults. And my argument is fairly simple, Your Honors. We would not be here if there were any statute, rule, or authoritative statement from the federal government that said either of two things, that incontinence briefs are an item that must be covered by states for preventive purposes for adults or that incontinence briefs are medically necessary for the prevention of skin breakdown or infection. But there's nothing that says either one of those. And if there were, we'd undoubtedly see that from the plaintiffs instead of the two documents that they've recently filed as supplemental authorities that also make neither of those points. The Office of Inspector General report, for instance, that they filed simply says without citation to any authority at page 2, quote, disposable incontinence supplies are considered medical supplies. Well, that's fine, but that doesn't help. Of course, they fall into that category when they're covered. But the OIG report doesn't say briefs are either medically necessary for preventive purposes or required to be covered for that purpose. And nothing else does. So my argument is the judgment on the pleadings cannot be entered in favor of the plaintiffs here when we've got our defenses that have to be accepted as true for the purposes of that analysis. I'm sorry. And those defenses can't simply be dismissed as failing on their face. In addition to that, the plaintiff's theory about this age policy is simply wrong. So we respectfully contend that it was error to grant judgment on the pleadings for the plaintiffs. The decision below should be reversed. The injunction and the award of attorney's fees should be vacated. And because the plaintiff's theory on the law is just wrong and has no basis, judgment should have been entered and should now be entered in favor of the State. And if you have no questions, I'll reserve the rest of my time. I have one question. You say that your definition, whatever it is, Section 922-101 as to what is medically necessary, is subject to the State's determination that it can decide somehow whether something that would appear to be medically necessary really isn't. And what is that based on? Part of the same definition, Your Honor. Part of the regulations in Arizona is that a prescription must be able to withstand medical review by the agency. In other words, most things, of course, get agreed to. But the State has the right to look for medical necessity and utilization control purposes specifically to see whether what has been prescribed is necessary and in the right amounts and that kind of consideration, Your Honor. It's to avoid unnecessary services. Okay. And so I... Can you give me the citation to that? If I may, Your Honor, I'll get it when I get up for my ten seconds, because I'll have to get it for you. All right. Thank you. Good morning. May it please the Court. My name is Sarah Kater, and I represent Appellee's plaintiffs in this case. Access's policy of denying incontinence briefs to plaintiffs violates Federal Medicaid law. Judge Tashima of the district court enjoined access from enforcing this policy, and we urge affirmance of the decision below. Plaintiffs are all incontinent, given the severity of their disability, over 21, eligible for Medicaid and long-term care services, which makes them eligible for nursing care services. They were all prescribed incontinence briefs for treatment of their incontinence and to prevent further skin breakdown. While Mr. Johnston was correct that this case is quite simple, unfortunately, Access has tried to confuse the Court by creating a false distinction between treatment and prevention. In terms of medical care, there is no such distinction. Prevention is part of the goal of treatment, and when you think of other types of treatment for medical conditions, it's easy to understand that prevention is part of treatment and oftentimes cannot be easily or understandably separated from treatment. Other treatments for incontinence, which are not available to these plaintiffs given the severity of their disability, also prevent, and Access covers them, whether it be surgery or drugs or exercises that are prescribed by physicians. Access covers these treatments, and they also prevent further skin breakdown. The main problem with the State's argument is that they have provided no evidence, none, despite numerous opportunities before the district court and this court as to why incontinence briefs do not prevent skin breakdown. To the contrary, plaintiffs have provided numerous pieces of evidence to the district court and to this court as to why they do. First, there are the prescriptions of the doctors which have prescribed incontinence briefs to prevent skin breakdown and to treat incontinence. The insurance companies approved these prescriptions, and this is all contained in the complaint. Plaintiffs provided to the Court citations from the Merck Manual and Tabor's dictionary which cite incontinence briefs as treatment and prevention for incontinence. And the amicus brief which was submitted to this court and has yet to be accepted for filing, but we urge you to do so, contains page after page after page of evidence as to why incontinence briefs prevent skin breakdown. In addition, all of the cases, and there are many, related to incontinence briefs talk about incontinence briefs as preventing skin breakdown. The evidence goes on and on and on. And as Judge Reithart appropriately pointed out, the State's definition of medical necessity includes prevent. Indeed, it is the only verb contained in the definition. Judge Tsushima properly found that accesses policy violates two provisions of the Medicaid Act, the Home Health Services provision under AA10D and the reasonable standards provision. Mr. Johnson incorrectly tries to couch this case in terms of an EPSDT argument. Plaintiffs are not eligible for EPSDT given their age. That is correct. But they are covered under the Home Health Services category of Medicaid, which is a mandatory category. Home Health Services is a mandatory category for individuals who are eligible for nursing care services. And our plaintiffs are eligible given they are eligible for long-term care services under access. The purpose of Home Health Services is prevention. The purpose of this category is to prevent an individual from having to go to a nursing care facility. And one of the most common reasons for an individual to have to go to a nursing care facility would be lack of incontinence briefs because you can't live in the community if you're sitting in your own waste. Medical supplies are required under Home Health Services' mandatory category and incontinence briefs are medical supplies. As I've stated, medical necessity in Arizona includes prevention. And even if Home Health Services was an optional category, which it is not for these plaintiffs, the reasonable standards provision of the Medicaid Act also applies here. The State does have discretion, but it is not unbridled. The State has to be reasonable when it puts forth limitations on certain medical supplies. Can I just ask you for clarification of really what is at issue? I mean, if the central issue is whether or not you need incontinence briefs to prevent skin deterioration, if that's a factual question, then ordinarily that would not be resolved on a motion to dismiss. I had thought the State's position was that really as a matter of law, prevention does not warrant an obligation that they provide those particular supplies. Essentially that if the supplies are being used just to prevent illness, it becomes a matter of some discretion with the State. Is their position, well, should I ask you what their position is? But is their position one of a factual dispute? That is, you don't need incontinence briefs because it doesn't necessarily prevent skin deterioration? Or is it a totally legal issue in regard to? It is a legal issue. In their motion for judgment on the pleadings, they said there were no facts in dispute and that the standard of medical necessity is a legal standard. And so I don't quite agree that they have discretion as to prevention. Prevention is what is under question when you look at medical necessity. It is the legal standard. Does it prevent disease, disability or other adverse health condition? And the problem with this special carve-out rule that the State has created is if, in fact, incontinence briefs did not prevent skin breakdown, they would fail the test of medical necessity. You would not need an additional separate rule only for people who are incontinent and only for people who have been prescribed incontinence briefs and only to prevent skin breakdown. They would not need a special rule to say we don't want to cover that. They would fail the test of medical necessity. The problem is they don't. The State knows that these briefs prevent skin breakdown and they don't want to pay for them. And in a sense, they're shifting the cost to families because I've worked with my plaintiffs and the families pay for them because it's untenable to expect an individual to sit in their own waste indefinitely until they endure immense pain and suffering to require the State to pay for them. It doesn't happen. It's not reasonable and the families end up paying for them and Access knows that. And so they created the special carve-out rule so that the families have to pay for them and they don't. Kennedy, what is the special carve-out rule you're talking about? That if only if you're incontinent and over the age of 21, for preventative purposes, do incontinence briefs now become some different type of item. So we had three plaintiffs that before the age of 21 received incontinence briefs and on their 21st birthday, the State changed the definition of what that meant for them and stopped paying for them. So that's a special rule that only applies to adults who are incontinent who have been prescribed incontinence briefs for preventative purposes. When you say they stopped it, they didn't adopt a new rule or anything? You're just saying they stopped it. Well, the rule existed. It just didn't apply to those three individuals until they turned 21. And once they turned 21, all of a sudden, this ---- And what is that rule? That's what I was asking you. Are you asking the citation? What rule do you say they carved out? The rule is, it's Arizona Administrative Code, R922212E5. R9 ---- pardon me. Can I get the rest of that? Sure. R922212E5. So what you're suggesting is the definition in Arizona law of medical necessity includes prevention. Explicitly. Explicitly in Section R922101. That's correct. And that this ---- so as a result, as a legal matter, they are supposed to cover those items which are necessary to prevent illness. Correct. But they've decided that this really doesn't prevent illness, or they've worked out a carve-out analysis that suggests this should be treated differently than other medically necessary things. I suppose you'd have to possibly ask ACCESS to clarify more clearly what they actually are arguing. But it seems that they've simply created this special carve-out rule so they don't have to cover the medical supply. Well, in response to the motion to dismiss, they acknowledge that there are no facts at issue. Correct. Right? Right. I would assume that that means that they acknowledge that those incontinence briefs are preventive in nature. I assume ---- I would assume as well. Judge Tsushima properly recognized the EPSDT argument as a red herring. While 21 may be a legally significant age in the United States, it is not medically significant as it relates to this service for these individuals. The cases in why SDV Hood, that Mr. Johnson referenced, is not relevant to the point that he wishes to make is because that was an EPSDT case. And so the evaluation the Fifth Circuit was doing was under EPSDT, which is not applicable to our plaintiffs. And the analysis that ought to be done for our plaintiffs is not an EPSDT analysis. The evaluation has to be done under the Home Health Service's mandatory category, which they're eligible for, and the reasonable standards, which applies to all services, both mandatory and optional. And so just because the state provides incontinence briefs to individuals under the age of 21 pursuant to EPSDT does not justify why they don't for adults. The analysis for adults has to be done under the provisions that the adults are eligible for. The state does have discretion, like I said, but they don't have unbridled discretion. And the whole purpose of the Medicaid Act and so many of the cases relating to Medicaid talk about restrictions on the state's discretion. They can't just do whatever they want. They have to follow the reasonable standards. Medical necessity is the main standard that helps to limit what states have to provide. And the state of Arizona chose. There's no federal definition of medical necessity. The state of Arizona chose to define medical necessity as it did and to include prevention as the basically sole verb in the definition and why something should be medically necessary or not. And as to cost effectiveness, the state tries to make both arguments. They say we have the right to decide that something's too costly and we don't want to pay for it. But then they make the argument that only eight people have applied. So they can't say that it's so rare that we don't want to pay for it and also it's too costly. I mean, those two things go against each other. And in addition, you can't just deny something simply based on the fact that it costs money. That has been disregarded as a reason why the state can deny paying for a Medicaid service. The question is whether it's cost effective. And cost effective is a comparison. You look at two services that would be able to treat a condition or prevent disease and you try to decide is this more cost effective than another. The state has provided no evidence of any other alternative besides incontinence briefs because there aren't any. These are a last resort for these individuals because their disabilities are so severe that they require these briefs so that they don't sit in their own waste. And finally, there's no common sense to actually delay the cost because if you delay the cost, what happens? If you don't provide incontinence briefs, these individuals will sit in their own waste, their skin will deteriorate, and they are at risk for hospitalization, nursing care facility requirements, and also possibly sepsis and death. This really is an issue of life and death. If you sit in your own waste, your skin will deteriorate and you could die. And as I said, the state knows that that's not tenable. These individuals won't sit in their own waste. Their families will pay for these briefs, and they do. So really it's not whether it's cost effective. It's simply a cost shifting, which the state doesn't want to admit. But that's what's happening here. I think that, like as I said in the beginning, the state really tries to emphasize this distinction between treatment and prevention, but it's a false one. And I really urge you not to buy into this distinction because it doesn't exist, and the state has merely created it so they don't have to pay for these briefs. It's bad medicine and it's bad law, and Judge Shishima so found, and we urge you to affirm his decision. If there are no further questions. Thank you. Your Honor, could I give you your cite? It's AACR 9-22-101 or 201. I regret I don't have the exact cite with me. I thought it was 212. 212 has been referenced in this case, but it's the definition of medical necessity that I think you're looking for, Your Honor. And that is something different, and I simply don't know. 2101 is the definition of medical necessity, 22-101. 22-101 or 201. Could I just say three quick things in reply? In response to your question, Judge Sessions, about whether we said there were no facts in dispute, that was with respect to our motion for judgment on the pleadings. We said as a matter of law they're wrong. Then they filed a cross motion. There are all sorts of issues of fact with respect to that motion. They say that we are deliberately, knowingly not covering a service as vital as this because we would prefer to shift the cost to the people who need this service and that we know this is medically necessary. That's absurd, Your Honors, and they need to prove that, not simply allege it. What's absurd about that? I'm sorry? What is absurd? It's absurd to say that the State knows that this is a medically necessary service and that we are deliberately choosing to ignore our ethics and our requirements so that we could shift the cost to them. Access doesn't do that, Your Honor, and, you know, you don't need my speech on that, but that's something they need to prove. And finally, they talk to you. You don't object to coverage of preventive materials or systems, et cetera. What you're basically saying is factually they cannot establish that incontinence briefs are preventive in nature. I mean, this is a straight, from your perspective, a straight factual question. Is that correct? Is that the position you have? That's exactly correct, Your Honor. Why is that? Because your position is, as I understand it, that the State has the discretion to make that decision and that's the end of the story, right? I mean, would you expect a trial to determine the medical necessity of coverage? That seems to be a little bit extraordinary to me. I would expect that, Your Honor. When I say it's extraordinary, I mean that if I understand your position, you think that a Federal court should be able to tell, make a determination about medical necessity that would apply to all Arizonans and bind them on the basis of evidence presented. And the reason I say it's extraordinary, and maybe I'm using the wrong term, is I just didn't think that was your position. I thought your position was that we had to defer to the State and that was the end of the story. I didn't think your position was that every State decision was able to be second guessed by evidence in court. Am I missing something? Well, I think any decision we make, Your Honor, is subject to disagreement and challenge. That's all I'm saying. Unlike the people in Missouri who did not have a means to challenge the decision they didn't like about the durable medical equipment in the Hildebrand case, these plaintiffs have a right to say we disagree with your decision and we challenge it and take it to court. Are you talking about it as an individual right or as a collective right? These are people acting individually, Your Honor. Okay. Now I understand. So then they have a right to a trial. Correct. To make an assessment as to whether or not you were accurate in deciding that this was not medical necessity. That's correct, Your Honor. But if I understand the State's or your position, is that you weren't making individual medical judgments. You were making collective medical judgments that this was never going to be covered for preventive purposes. Is that right? We were making the decision that this is not a covered service based on our belief that it's not a medically necessary service for preventive purposes. Okay. And the only other thing I wanted to clarify, if you'll bear with me, is the idea that we have created a special rule that applies to adults. No. The rule in Arizona prior to 2006 was we don't cover briefs for preventive purposes for anybody, only because the Eklof decision, which is mentioned throughout our briefs, decided that we had to cover it under EPSDT. Do we now have a special rule for children under the EPSDT rule? Right. They sued and it wasn't – I was going to ask you about that because I thought you had implied that you made a collective decision or the decision based on coverage for children, but actually it's the Federal court that told you to do that. That's correct.  Thank you, Your Honors. Thank you, counsel. The case disargued will be submitted.
judges: Sessions, Reinhardt, Thomas